**Julia INDRIATI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 08–3181.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 24, 2009.

Opinion filed: Oct. 9, 2009.

Joan O. Pinnock, Esq., Newark, NJ, for Petitioner.

Richard M. Evans, Esq., Virginia M. Lum, Esq., Andrew J. Oliveira, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, SMITH and HARDIMAN, Circuit Judges.

## OPINION

PER CURIAM.

Julia Indriati, a native and citizen of Indonesia, petitions for review of an order of the Board of Immigration Appeals (BIA). We will deny the petition for review.

Indriati is Chinese and Catholic. Her home in Indonesia was attacked in 1974 when she was 18 years old. She did not see the attackers, but she heard them, and they attacked the furniture and took valuables from the house. She was also present during a similar attack on her home in May 1998, and similarly did not see the attackers, but heard what was occurring. In December 1999 a man grabbed her from behind, took her purse, took her Bible from it, threw it on the ground and stepped on it, saying it was "garbage." He grabbed parts of her body and told her not to go to church. He left when some people came. She did not report the incident to police. She left Indonesia in February 2000 on a tourist visa because she did not feel safe.

The Immigration Judge (IJ) determined that her asylum claim was untimely and that no exceptions applied. The IJ determined that Indriati probably had a subjective fear of returning to Indonesia, but she did not find that the incidents Indriati experienced rose to the level of persecution. The IJ also found that Indriati had not established that there was anyone in Indonesia that sought to harm her if she should return, and thus denied withholding of removal. The IJ also found no evidence that Indriati would be tortured. The IJ granted voluntary departure.

The BIA agreed that Indriati's asylum claim was untimely and agreed that the incidents she experienced in Indonesia either were not on a protected ground or did not rise to the level of persecution. The BIA also agreed that Indriati did not establish that she would be subject to torture in Indonesia. Indriati filed a timely petition for review.

■ We must first consider which of Indriati's claims are properly before this Court for review. In most cases, we have jurisdiction to review a final order of removal involving the denial of asylum. 8 U.S.C. § 1252(a)(1). However, 8 U.S.C. § 1158(a)(3) provides that no court shall have jurisdiction to review any determination regarding the timeliness of an asylum

application and the applicability of the exceptions. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir.2003). Although the subsequently enacted REAL ID Act amended the Immigration and Nationality Act to allow constitutional claims or questions of law to survive its jurisdiction-stripping provisions, *see* REAL ID Act 106(a)(1)(A)(iii), 8 U.S.C. § 1252(a)(2)(D), Indriati has not raised any legal or constitutional claims regarding the IJ's determination that her asylum claim was untimely. Because we lack jurisdiction to consider whether her asylum application was timely, our review is confined to consideration of whether the BIA properly affirmed the denial of withholding of removal.[1]

To be eligible for withholding of removal, Indriati must demonstrate that it is more likely than not that her life would be threatened in Indonesia on account of race, religion, nationality, membership in a particular social group, or political opinion. *Tarrawally*, 338 F.3d at 186; 8 U.S.C. § 1231(b)(3)(A). We may reverse the BIA's decision only if the record would compel a reasonable factfinder to conclude that the requisite fear existed. *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

In her brief, Indriati briefly mentions the incidents regarding the attacks on her home and her person that we note above. She then concludes that she "[c]learly ... established that she had suffered persecution and if she were to return to Indonesia, she would continue to suffer persecution based on her race and religion." Petitioner's Brief at 7–8.[2] While we agree that these incidents are troubling, the record does not compel the con-clusion that they rise to the level of "persecution." *See Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," and explaining that persecution "does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional"); *Wong v. Att'y Gen.*, 539 F.3d 225, 236 (3d Cir.2008) (observing that "harassment and discrimination do not constitute persecution"); *Lie*, 396 F.3d at 536 (holding that "two isolated criminal acts, perpetrated by unknown assailants, ... [are] not sufficiently severe to be considered persecution"). We will therefore deny the petition for review.

---

1. Indriati's brief contains no argument concerning relief under the Convention Against Torture; we thus deem the issue waived. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n. 1 (3d Cir.2005).

2. Indriati also argues that the BIA failed to reach the issue of whether she qualified for withholding of removal. We agree with the Government's characterization of this argument as "specious." Respondent's Brief at 16, n. 5.